**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ONLINE MERCHANTS GUILD, | No. 21-16911 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-01952-MCE-DB |
| v. | |
| NICOLAS MADUROS, Director, California Dept. of Tax & Fee Administration, | OPINION |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted October 20, 2022
San Francisco, California

Before: S. R. THOMAS and M. SMITH, Circuit Judges, and MCSHANE,[*]
District Judge.

Opinion by Judge Sidney R. Thomas

---

[*] The Honorable Michael J. McShane, United States District Judge for the
District of Oregon, sitting by designation.

# SUMMARY[**]

## Tax Injunction Act

The panel affirmed the district court's dismissal of a federal lawsuit in which the Online Merchants Guild, a trade association for e-commerce merchants, sought to enjoin California's requirement that its members obtain seller's permits from the state to facilitate sales tax collection.

Guild members sell products as third-party merchants through Amazon's "Fulfilled by Amazon" ("FBA") program. Before October 2019, California required FBA merchants to collect and pay sales tax on sales to California residents. California's Marketplace Facilitator Act altered that requirement. Since October 2019, "marketplace facilitators" like Amazon have had the burden of collecting and remitting the sales and use taxes on sales facilitated through programs like FBA. However, the Marketplace Facilitator Act is not retroactive and the Department continued to seek sales tax remittances from third-party FBA merchants for pre-October 2019 sales.

The Guild's lawsuit claimed that the California Department of Tax and Fee Administration's tax collection efforts against Guild members violated the Due Process, Equal Protection, Privileges and Immunities, and Commerce Clauses of the United States Constitution, as well as the Internet Tax Freedom Act, 47 U.S.C. § 151. The district court granted the Department's motion to dismiss, holding that the Guild's claims were barred by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341. The district court also noted that it should abstain from addressing the Guild's claims under comity.

The panel held that the district court properly dismissed the action pursuant to the TIA, which bars federal jurisdiction over the Guild's claims because the Guild seeks an injunction that would to some degree stop the assessment or collection of a state tax and an adequate state law remedy exists.

---

[**]      This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Aaron K. Block (argued) and Max P. Marks, The Block Firm LLC, Atlanta, Georgia, for Plaintiff-Appellant.

Michael Sapoznikow (argued), Deputy Attorney General; Molly K. Mosley, Supervising Deputy Attorney General; Tamar Pachter, Senior Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the Attorney General, Sacramento, California; for Defendant-Appellee.

S. R. THOMAS, Circuit Judge:

In this appeal, we consider whether an association of e-commerce merchants may sue in federal court to enjoin California's requirement that its members obtain seller's permits from the state to facilitate sales tax collection. We conclude that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, precludes the exercise of federal jurisdiction, and we affirm the district court.

**I**

The Online Merchants Guild ("Guild") is a trade association for e-commerce merchants. Hundreds of Guild members sell products as third-party merchants through the e-commerce company Amazon's "Fulfilled by Amazon" ("FBA") program. When a customer purchases a product on Amazon provided by an FBA merchant, Amazon collects payment, and after charging a commission for the sale, credits the payment to the merchant's account. The goods are therefore ostensibly sold by the third-party merchant, but "fulfilled by" Amazon.

Appellee Maduros is the Director of the California Department of Tax and Fee Administration ("Department"), which, among other responsibilities, enforces California's sales and use taxes. Cal. Rev. & Tax. Code §§ 20, 6003, 6004, 7051. Before October 2019, California required FBA merchants to collect and pay sales tax on sales to California residents. California's Marketplace Facilitator Act, 2019

3

Cal. Stat. ch. 5, § 1 (A.B. 147), altered that requirement. Since October 2019, "marketplace facilitators" like Amazon have had the burden of collecting and remitting the sales and use taxes on sales facilitated through programs like FBA. Cal. Rev. & Tax Code §§ 6042, 6043. However, the Marketplace Facilitator Act is not retroactive and the Department continued to seek sales tax remittances from third-party FBA merchants for pre-October 2019 sales. *Id.* § 6049.5(a).

Anyone selling goods in California must pay sales tax. *Id.* §§ 6014, 6051, 6066. The taxpayer for the sales tax is the seller themselves, who may pass the tax along to the consumer if they wish.[1] *Id.* §§ 6051, 6901.5. The first step in remitting collected sales tax to the state is to apply for a "seller's permit." *Id.* § 6066. After a permit issues, sellers are assigned an account number, which is used to process the quarterly returns remitting the sales tax that sellers must file. *Id.* §§ 6066.4, 6051, 6452(b), 6454.

---

[1] The use tax, on the other hand, is an excise tax "imposed on the storage, use, or other consumption in [California] of tangible personal property purchased from any retailer. Cal. Rev. & Tax Code §§ 6015, 6201. The taxpayer for the use tax is the consumer, not the retailer, although retailers must collect and remit the use tax on behalf of the consumer. *Id.* §§ 6202(a), 6203(a). Property for which sales tax is collected is exempted from the use tax. *Id.* § 6401.

Failure to register for a required seller's permit is a misdemeanor punishable by a fine of $1,000–$5,000 and up to a year in jail. *Id.* §§ 6071, 7153. More serious violations of the tax code result in felony punishment. *Id.* § 7153.5.

As part of its efforts to collect sales tax, the Department sent notices to Guild members informing them that they must obtain seller's permits. The notices also inform the recipient of the criminal penalties for violating the tax code. *See id.* §§ 6071, 7153, 7153.5. These "registration demands" and "penalty threats," as the Guild labels them, are the subject this appeal.

In September 2020, the Guild filed suit in the Eastern District of California claiming the Department's tax collection efforts against Guild members violated the Due Process, Equal Protection, Privileges and Immunities, and Commerce Clauses of the United States Constitution, as well as the Internet Tax Freedom Act, 47 U.S.C. § 151. The complaint alleges injuries from both the registration demands and the Department's broader policy of collecting taxes on FBA sales from Guild members rather than Amazon. The Guild claims that Amazon should collect and pay all sales and use tax on products sold through the FBA program because of Amazon's extensive control over how the products are stored, marketed, sold, and shipped. The Guild seeks declarative and injunctive relief and requests damages, costs, and fees.

5

The Department moved to dismiss the complaint for lack of jurisdiction pursuant to the TIA, as well as the principles of comity and abstention.

The district court granted the motion to dismiss, holding the Guild's claims were "clearly barred" by the TIA because they did not "fall within the exception to the TIA for 'information gathering' activity." The district court also noted it "agrees that it should abstain" from addressing the Guild's claims under comity. The Guild timely appealed.

The Guild appeals only the dismissal of Counts 2, 4, and 7 of the complaint, which it construes as challenging the registration demands and penalty threats and not the taxes themselves.

## II

The district court properly dismissed the action pursuant to the TIA. Under the TIA, "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA "was designed expressly to restrict 'the jurisdiction of the district courts of the United States over suits relating to the collection of State taxes.'" *Hibbs v. Winn*, 542 U.S. 88, 104 (2004) (quoting S. Rep. No. 1035, 75th Cong., 1st Sess., 1 (1937)). "[I]n enacting the TIA, Congress trained its attention on taxpayers who sought to avoid

6

paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority." *Id.* at 104–105. However, the TIA does not preclude all challenges to state taxation.

We hold that the TIA bars federal jurisdiction over the Guild's claims because the Guild seeks an injunction that would to some degree stop the assessment or collection of a state tax and an adequate state law remedy exists.

## A

In order to determine whether the TIA bars the Guild's claims, we must first characterize those claims. *Id.* at 99. In doing so, we must identify the "relief sought." *Direct Marketing Association v. Brohl*, 575 U.S. 1, 7 (2015).

In its complaint, and on appeal, the Guild characterizes its claims as challenges to the Department's registration demands and penalty threats—the imposing letters Guild members received informing them of their duty to obtain a seller's permit. But the relief the Guild seeks is not so limited. The Guild seeks "injunctive and declaratory relief . . . to remedy the Department's violations of law and to vindicate the constitutional rights of the Guild and its members and to prevent irreparable injury to the interstate economy." Placed in context with the registration requirements the Guild challenges, the relief sought here is injunctive

7

and declaratory relief preventing the Department from enforcing the requirement that Guild members apply for a seller's permit.

**B**

The TIA precludes suits in federal court where the requested relief would "to some degree stop" the assessment or collection of a state tax. *Direct Marketing*, 575 U.S. at 7. Relieving Guild members of the duty to obtain seller's permits would prevent the remittance of sales tax. The Guild's suit is therefore barred by the TIA.

No party disputes that applying for a seller's permit is the first step in reporting and paying sales tax. After obtaining a permit, sellers are assigned an account number, which is used to process the quarterly returns remitting the sales tax that sellers must file. Cal. Rev. & Tax Code §§ 6066.4, 6051, 6452(b), 6454. In other words, Guild members cannot remit the sales tax they are required to collect under California law without obtaining a seller's permit. The relief the Guild requests would therefore "to some degree stop" the assessment or collection of sales tax in California.

*Direct Marketing* is not to the contrary, and the reporting and information gathering requirements at issue in that case are distinguishable from the registration requirements here. In *Direct Marketing*, a trade association of direct-

to-consumer sellers sued the Director of Colorado's Department of Revenue,

seeking to enjoin Colorado's imposition of sales and use tax-related "notice and

reporting requirements" on out of state retailers. 575 U.S. at 5–6. More

specifically, Colorado required retailers that did not collect Colorado sales and use

tax to notify their Colorado customers of the *customer's* duty to file a sales or use

tax return and provide those customers with annual reports detailing their

purchases. *Id.* at 6. Colorado also required the retailers to send an annual report

to the state "listing the names of their Colorado customers, their known addresses,

and the total amount each Colorado customer paid for Colorado purchases in the

prior calendar year." *Id.* The purpose of this requirement was to facilitate

Colorado's collection of sales and use tax from the customer. The Court held the

TIA did not bar the trade association's suit because although enjoining the laws

would inhibit Colorado's ability to collect taxes, it would not stop it from

collecting those taxes. *Id.* at 14.[2]

---

[2] The Guild argues that under *Direct Marketing,* we cannot uphold the district court's ruling unless we define one of the TIA's listed tax enforcement phases—assessment, levy, or collection—to include the step in the taxation process that they "challenge," which is the requirement that they register as sellers. But *Direct Marketing* is not so narrow. The Supreme Court went beyond the discussion of those tax enforcement phases and overturned the Tenth Circuit's broad definition of "restrain," holding that in the TIA, that word means "to some degree stop," rather than "inhibit." *Id.* at 12–14.

In contrast, here, the Guild seeks to enjoin much more than "information gathering" that makes it easier for the state to collect taxes from a third party. Unlike the Association in *Direct Marketing*, the Guild's members are the actual taxpayer. The relief the Guild requests would prevent the collection of taxes owed. Therefore, the requested relief would "to some degree stop" the assessment or collection of a state tax, and federal courts lack jurisdiction under the TIA.

## C

The TIA precludes federal jurisdiction only if there is a "plain, speedy, and efficient" state remedy available. 28 U.S.C. § 1341. This "requires only that a state court remedy meet certain minimal procedural criteria. Specifically, a plain, speedy, and efficient remedy must provide a taxpayer with a full hearing and judicial determination at which he may raise any and all constitutional objections to the tax." *Hyatt v. Lee*, 871 F.3d 1067, 1073 (9th Cir. 2017) (internal quotation marks and citations omitted).

Here, the Guild members have a state remedy: register, pay the taxes due, and then pursue a refund action. *See Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1101–02 (2014) (explaining scope of California's constitutional prohibition on state court challenges to tax collection). Refund actions must first be brought in administrative proceedings. Cal. Rev. & Tax. Code § 6932. If the Department

10

denies the claim or does not respond within six months, the taxpayer can sue in state court for a refund. *Id.* §§ 6931–6937.

The Supreme Court has held California's tax refund procedures to be a "plain, speedy, and efficient" remedy for constitutional and statutory challenges to tax information and reporting requirements. *California v. Grace Brethren Church*, 457 U.S. 393, 398, 414–17 (1982). In *Grace Brethren*, California churches and religious schools brought constitutional claims seeking to enjoin, among other things, the collection of "both tax information and [a] state tax." 457 U.S. at 398. The district court held that a state tax refund suit would not provide a "plain, speedy and efficient" remedy, "because the plaintiffs claimed not only that their property had been taken unlawfully, but also that the 'very process of determining whether any tax is due at all results in a violation of their First Amendment rights.'" *Id.* at 401. The Supreme Court disagreed and held that California's tax refund system constituted a "plain, speedy and efficient remedy" both for the direct challenges to taxation, but also for the challenges against the pre-assessment recording and recordkeeping requirements. *Id.* at 414–17. "Nothing in this scheme prevents the taxpayer from raising any and all constitutional objections to the tax in the state courts," and if those objections are successful, "there is every reason to

believe that once a state appellate court has declared the tax unconstitutional the appropriate state agencies will respect that declaration." *Id.* at 414.

Under *Grace Brethren*, Guild members have a plain, speedy and efficient remedy in state court. They may pay the tax and seek an administrative refund on the grounds that the registration requirement is unconstitutional or unlawful as applied to them. If the administrative claim is denied or six months passes, they may sue in state court. If they are successful, "there is every reason to believe" the Department will "respect that declaration." *Id.* at 415. This expectation is reasonable, contrary to the Guild's assertions, even if Guild members may be subject to "civil and criminal penalties for nonpayment." *Matthews v. Rodgers*, 284 U.S. 521, 526 (1932).

### III

The district court also properly concluded that it should refrain from hearing the claims under the principles of comity. However, having concluded that federal jurisdiction is constrained by the TIA, there is no need for us to reach that issue.

**AFFIRMED.**

12